UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re: MICHAEL BONDS    Case No. 11-28458-JES
                        (Chapter 7)
   Debtor.

MOTION OF THE UNITED STATES TRUSTEE FOR A
DETERMINATION OF REASONABLE VALUE OF SERVICES
PURSUANT TO RULE 2017, FED. R. BANKR. P., AND 11 U.S.C. § 329

NOW COMES the United States Trustee, by Attorney Michelle S. Y. Cramer, who moves for a determination of reasonable value of services pursuant to Rule 2017, Fed. R. Bankr. P., and 11 U.S.C. § 329, and who in support hereof asserts as follows:

1. The Debtor, Michael Bonds, filed the above-referenced Chapter 7 bankruptcy case on May 25, 2011.

2. He also filed an amended Means Test and indicated the presumption of abuse did not arise on the amended Means Test. *See* Docket Entry #5.

3. On the amended Means Test Mr. Bonds claimed a household of one and checked the box "Married, not filing jointly, with declaration of separate households." He listed earnings of $96,000 a year, the average median family income for the same sized household is $41,150.

4. There were numerous errors on the amended Means Test. In correspondence dated July 27, 2011, the United States Trustee pointed out the errors to counsel, Mr. Kenyatta Riley, and also provided a copy of its revised Means Test.

Attorney Michelle S. Y. Cramer
Office of the U.S. Trustee
517 East Wisconsin Avenue, Suite 430
Milwaukee, WI 53202
Phone (414) 297-4499
Fax    (414) 297-4478

5. When the Means Test form is correctly filled out, the presumption of abuse does arise. Consequently, the United States Trustee filed a notice of presumed abuse under 11 U.S.C. § 707(b)(2). *See* Docket Entry #6.

6. Based on the United States Trustee's own investigation and newspaper articles in which Mr. Bonds' stated he lived with his wife, the United States Trustee also requested additional information in its July 27, 2011 correspondence to Mr. Riley.

7. No documents or a response were provided in response to the July 27, 2011 request.

8. On August 8, 2011, the United States Trustee filed a motion to dismiss under 11 U.S.C. § 707(b)(3).

9. That same day, Mr. Riley sent an email to the United States Trustee stating he would provide the documents [requested on July 27, 2011], by the end of the week. The United States Trustee never received documents from Mr. Riley. *See* Exhibit 1.

10. Instead, on August 9, 2011, Mr. Bonds called the United States Trustee but was informed that because he was represented we could not speak with him.

11. On August 11, 2011, Mr. Bonds emailed a copy of a letter he provided to Mr. Riley on July 29, 2011, in which he answered all of the questions asked in the United States Trustee's correspondence of July 27th.

12. Mr. Bonds also hand delivered the same letter to the United States Trustee on August 11, 2011. And, to guarantee its receipt, Mr. Bonds mailed the letter by certified mail receipt requested.

13. Further still, on August 16, 2011, Mr. Bonds also filed with the Court a copy of the letter he provided to Mr. Riley. *See* Docket Entry #18.

2

Case 11-28458-jes    Doc 31    Filed 09/16/11    Page 2 of 8

14. Ultimately, Mr. Bonds terminated Mr. Riley's employment and hired Attorney James Hall on a limited basis.

15. Mr. Hall contacted the United States Trustee and requested a meeting between the parties. At that meeting Mr. Bonds testified under oath and stated as follows:

    a. Mr. Bonds consulted with Mr. Riley's firm in March 2011. He met with a woman he addressed as "Attorney Armanda." He believed she was an attorney because she provided him with her business card which had the initials "Esq." after her name and she acted like an attorney. Mr. Bonds later found out this woman was not an attorney but a paralegal. When he questioned why she used the initials "Esq." on her business card, she stated she went to law school but did not finish.

    b. Mr. Bonds stated it was always his intention to file a Chapter 13 because he wanted to repay his creditors.

    c. He paid $650 to the law firm on March 1, 2011, to be applied to his Chapter 13 and another installment of $650 on March 11, 2011. Mr. Bonds provided copies of receipts confirming his payments for a Chapter 13 bankruptcy.

    d. Notwithstanding his desire to file a Chapter 13, Mr. Bonds said his attorney made a determination that he would be better off financially in the end if he filed for Chapter 7. He was told that if the Chapter 7 did not work the case would automatically be converted to a Chapter 13.

    e. Mr. Bonds told the people assisting him at the law firm that he his wife were granted a legal separation in 2006, but they had reconciled and have lived together since 2007.

f. On Mr. Bonds' initial bankruptcy intake form he listed both he and his wife's income and expenses. He indicated they each paid half of the mortgage payment.

g. But he said he also told Mr. Riley that his wife did not want to be a part of the bankruptcy proceedings.

h. Mr. Bonds stated he did not read the section of the Means Test that states, "Married, not filing jointly, with declaration of separate households." He said that is not true, and he has always been open about the fact he and his wife live together. He also openly disclosed his living situation in his response to the United States Trustee's request for information.

i. When Mr. Bonds provided Mr. Riley's office with he and his wife's joint 2010 tax return (completed but not filed with the IRS), Mr. Riley's office indicated Mr. Bonds needed to file his taxes separate from his wife. So, Mr. Bonds paid his accountant an additional $100 to re-do their taxes so he could file separately.

j. Even though Mr. Bonds met with his attorney's firm in March 2011, his case was not filed until May 2011. Mr. Bonds called the firm on numerous occasions because he was constantly being contacted by creditors. He was told the firm was waiting for a certain trustee to get on the docket before it filed his bankruptcy because certain trustees are not as bad as other trustees. He restated he did not have a problem filing a Chapter 13 because it was not his intent to avoid repaying his creditors, but he was told he would be better off in a Chapter 7.

k. After the United States Trustee filed its statement of presumed abuse, Mr. Bonds contacted his attorney about the significance of the statement. Mr. Bonds was told it was a technicality.

l. Mr. Bonds said he received a copy of the United States Trustee's July 27th request for additional information and he hand-delivered his response to Mr. Riley's firm on July 29, 2011.

m. When he read the motion to dismiss and noted the United States Trustee did not receive a response, Mr. Bonds contacted his attorney. He was told Mr. Riley's office had provided his response to the United States Trustee.

n. Mr. Bonds was repeatedly told that, "Riley would take care of everything." Mr. Bonds said he never spoke with Mr. Riley regarding the failure to respond to the United States Trustee's request for information.

o. A few days later when the United States Trustee filed its motion to extend time to object to discharge, Mr. Bonds again read that no information had been given to the United States Trustee.

p. Consequently, Mr. Bonds again contacted Mr. Riley's office and asked about the response he provided. The paralegal told him she was "too stressed out" to deal with this and that "Riley was sick and tired," he provided the document to the United States Trustee and that the "United States Trustee was giving me [Mr. Bonds] a hard time." The paralegal stated the law firm sent the documents "certified" to the United States Trustee.

q. During one of his conversations with the law firm Mr. Bonds was told that for an additional $481 they would convert his case to Chapter 13. Mr. Bonds

5

balked and stated that was what he wanted in the first place and he was not giving the firm any more money.

r. Mr. Bonds decided to terminate Mr. Riley's employment after he received notice from the Clerk of the Bankruptcy Court that he needed to file a certificate of financial management. "It was the last straw," because he said he had previously provided the certificate to the law firm but they never filed it with the Court.

s. When Mr. Bonds went to Mr. Riley's office to pick up the stipulation to end Mr. Riley's representation, he was told again that "Riley" would have handled everything and that for $481 he could convert the case to Chapter 13.

t. In response to his numerous calls to Mr. Riley's office he was repeatedly told, "Don't worry about it, Riley will take of everything." But Mr. Bonds did not feel anyone was helping him in the face of the numerous filings by United States Trustee's or the notices from the Clerk of the Bankruptcy Court.

u. Mr. Bonds also repeatedly stated his intention was always to file a Chapter 13 and not a Chapter 7 and he disclosed both he and his wife's information on his intake forms with Mr. Riley's office.

v. It was never his intention to misrepresent he and his wife's living situation. Although legally separated, it was not his intent to portray that he and his wife maintained separate households.

w. Mr. Bonds believes he has been unfairly depicted as being non-cooperative when in fact he provided all of the information requested in a timely fashion.

6

Case 11-28458-jes    Doc 31    Filed 09/16/11    Page 6 of 8

16. Based on Mr. Bonds' testimony, Mr. Riley neither fairly represented nor acted in Mr. Bonds' best interest.

17. According to Mr. Bonds, he provided Mr. Riley with a timely and complete response to the United States Trustee's request for additional information but Mr. Riley did not provide the response to the United States Trustee.

18. However, Mr. Riley's firm told Mr. Bonds on more than one occasion that the document was provided to the United States Trustee.

19. The United States Trustee never received any documentation from Mr. Riley or his firm in response to its inquiry. As noted in Mr. Riley's email of August 8, 2011, after the United States Trustee moved to dismiss the case, Mr. Riley stated he would provide the documents by the end of the week. No documents were provided.

20. Moreover, Mr. Riley's advice to file as a household of one when he knew Mrs. Bonds' lived in the household and the couple shared income and expenses raises further concerns.

21. Further, Mr. Riley did not file Mr. Bonds' financial management certificate even though he provided it to the law firm.

22. The United States Trustee moves the Court to determine whether Mr. Riley's fee of $1,300 is reasonable in light of the facts of this case.

23. Once the reasonableness of fees charged in a bankruptcy case is raised, the burden of proof is on the person requesting fees. *See Matter of Geraci*, 138 F.3d 314, 318 (7th Cir. 1998), *cert. denied*, 525 U.S. 821 (1998).

WHEREFORE, the United States Trustee requests that the Court:

a. Schedule a hearing at which time Attorney Riley will have the opportunity to demonstrate that the fee charged to Mr. Bonds is reasonable and appropriate under the circumstances;

b. In the absence of a clear showing of reasonableness, enter an order finding the fees are unreasonable and order $1,300 refunded to Mr. Bonds; and

c. Grant such other and further relief as is just and appropriate.

The United States Trustee does not intend to file a brief in connection with this pleading but reserves the right to file a responsive brief or pleading if necessary.

Dated: September 16, 2011.

        PATRICK S. LAYNG
        United States Trustee


        \_\_\_/s/_____
        MICHELLE S. Y. CRAMER
        Attorney for the United States Trustee